**KUTNER BUICK, INC.,** Appellant,

v.

**AMERICAN MOTORS CORPORATION**
**and American Motor Sales**
**Corporation,** Appellees.

No. 88–1670.

United States Court of Appeals,
Third Circuit.

Argued Jan. 26, 1989.

Decided Feb. 24, 1989.

H. Laddie Montague, Jr. (argued), Martin I. Twersky, Berger & Montague, Philadelphia, Pa., for appellant.

William J. Lehane (argued), Drinker, Biddle & Reath, Philadelphia, Pa., for appellees.

Before GIBBONS, Chief Judge, and SEITZ and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

In this diversity case, Kutner Buick, Inc. (Kutner), a retail distributor of automobiles, appeals from a judgment in favor of American Motors Corporation (AMC) in Kutner's suit for breach of contract and fraud in the inducement of a contract. The trial court granted a directed verdict on the fraud in the inducement claim. The court submitted the breach of contract claim to the jury, but when the jury deadlocked, declared a mistrial. Thereafter, the court dismissed the breach of contract claim, purporting to act pursuant to Fed.R.Civ.P. 50(b). We will affirm the judgment in

AMC's favor on the fraud in the inducement claim, but reverse the judgment in its favor on the breach of contract claim and remand for a new trial on that claim.

## I.

### The Contract Claim

Kutner alleges that in 1981 it entered into a contract with AMC to serve as an AMC-franchised dealer for a ten-year period. A claimed term of the agreement was that the franchisee would have territorial exclusivity for distribution of AMC products in northeast Philadelphia. The evidence at trial was undisputed that there was a ten-year written franchise agreement. Kutner's witnesses claimed there was an oral agreement for territorial exclusivity coterminous with the franchise. William Carroll, an AMC zone manager, testified that there was an exclusivity agreement, but he was not certain about its duration. Mr. Carroll's version was that the exclusivity promise was to be reevaluated after Kutner's AMC dealership became established. Kutner's version was that it would not have incurred the significant start-up costs or agreed to a ten-year franchise term if it had not been promised territorial protection for that term.

Kutner has been a General Motors Corporation-franchised dealer since 1952, selling Buicks from a facility in northeast Philadelphia at 7100 Castor Avenue. In February, 1978, Kutner acquired another facility six blocks away, at 7227 Bustleton Avenue. Prior to being designated as an AMC dealer, Kutner used the Bustleton Avenue facility for selling Buicks, servicing new cars, and reconditioning used cars. In 1978, Kutner approached AMC about acting as an AMC dealer and some discussion ensued. On December 16, 1980, Kutner was turned down because Matt Slap had territorial exclusivity for the area. When in the summer of 1981 Matt Slap closed his AMC dealership, an AMC zone representative approached Kutner about taking on the AMC line. The ten-year franchise agreement mentioned above was signed, and thereafter Kutner used the showroom at Bustleton Avenue for the display and sale of AMC products. Kutner continued, however, to service Buicks, as well as AMC products, at the facility.

In the summer of 1982, a representative of Potamkin Motors approached an AMC zone representative to discuss the possibility of obtaining an AMC dealership in northeast Philadelphia. AMC told Potamkin it was not interested in another dealer in northeast Philadelphia at that time. In December of 1982, Mr. Carroll, with whom Kutner dealt on the subject of territorial exclusivity, was transferred. A new zone manager, in the summer of 1983, began negotiating with Potamkin Motors for an additional AMC franchise in northeast Philadelphia. An internal AMC memorandum can be read as indicating that the negotiations with Potamkin Motors were accelerated because of the pendency of a proposed state law which would have given Kutner the power to prevent location of an additional AMC franchise in close proximity to the Bustleton Avenue facility. *See* 63 Pa. Stat.Ann. § 818.18 (Purdon Supp.1988) (effective Jan. 1, 1984).

Potamkin Motors was awarded a franchise in the northeast Philadelphia region close to the Bustleton Avenue facility. When Kutner was so advised, it claimed that AMC had breached its contract and resigned as a dealer. Kutner sought unsuccessfully to obtain another automobile franchise for the Bustleton Avenue location. Kutner has continued to sell and service Buicks there.

Prior to the trial, AMC made a motion *in limine* to exclude the testimony of Kutner's accounting expert, F. Gerard Adams, with respect to damages, and a projection of lost profits prepared by that witness. In making the projection of lost profits resulting from the termination of the AMC franchise, Adams disregarded fixed costs at the Bustleton Avenue facility. After reserving decision on the question, the court eventually ruled that Adams' testimony and exhibit would be excluded because Kutner could only recover lost net profits and that calculation required an allocation to AMC sales of fixed costs.

At the end of the plaintiff's case AMC moved as follows:

> Your honor, at this time I would like to approach the bench to make a motion....

> Pursuant to Rule 50 of the Federal Rules of Civil Procedure, for a directed verdict in favor of the defendants on all counts. I believe that the contract has not been shown to be in existence and I particularly argue that there's been absolutely no showing of fraud on anyone's part, in the testimony that has been elicited through the plaintiff's case to date.

App. 535. No other grounds were advanced in support of the Rule 50 motion. The court denied the motion with respect to the contract count.

AMC then offered testimony in its defense. At the end of the entire case the court renewed the Rule 50 motion, adding no additional grounds. The motion was denied and the court instructed the jury.

After deliberating for some time, the jury informed the court that it could not agree on a unanimous verdict. The court instructed that they deliberate further, but after several days, the jurors still could not agree on a verdict. A mistrial was ordered.

Thereafter, AMC moved "for the entry of judgment in accordance with [its] motion for a directed verdict." The brief in support of the motion urged only, as had been argued in the Rule 50 motion at trial, that Kutner had failed to make out a prima facie case on the existence of a contract. In disposing of the motion, the district court observed: "The defendants have moved for judgment notwithstanding the verdict and the court has granted it for the reason set forth below, which is not the reason advanced by defendants in their motion." App. 742. The court then ruled, consistent with its *in limine* ruling on the admissibility of Adams' expert opinion testimony, that Kutner's case failed because its proof of damages, by failing to establish the fixed costs to be charged against its AMC sales, was too speculative to go to the jury.

## A.

### Procedural Error

■ Kutner contends that the trial court erred in granting a Rule 50 motion on a ground that was not presented in support of AMC's motion for a directed verdict, either at the end of Kutner's case or at the end of the entire case. The rule that a post-trial Rule 50 motion can only be made on grounds specifically advanced in a motion for a directed verdict at the end of plaintiff's case is the settled law of this circuit. *Orlando v. Billcon Int'l, Inc.*, 822 F.2d 1294, 1298 (3d Cir.1987); *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 814 (3d Cir.1984), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986). We need not here repeat the sound reasons which support that rule. It suffices to note that the district court's memorandum establishes its violation. The sufficiency of proof of damages was not advanced as a ground for AMC's directed verdict motion, and could not be relied upon, post-trial, as a ground for granting Rule 50 relief. Thus the judgment dismissing Kutner's contract claim must be reversed.

## B.

### Substantive Error

■ If the jury had reached a verdict, the procedural error in the grant of Rule 50 relief could be corrected by directing entry of judgment on that verdict. Here, however, there was a mistrial. Thus a new trial is required. That being the case, it is necessary to address, as well, the substantive grounds on which the district court excluded the Adams expert opinion evidence and granted Rule 50 relief.

Kutner owned the Bustleton Avenue facility. After it contracted with AMC to distribute AMC products, at least two separate business activities were carried on at that facility: sale of AMC products and sale of Buicks. Adams' damage theory, which the district court rejected, was that in determining the net lost profits from termination of the sale of AMC products, fixed costs for the Bustleton Avenue facili-

ty should be disregarded. This ruling was fundamental legal error. The effect on net income must be measured by revenue lost less costs avoided. This translates into lost revenue less the variable cost of producing this lost revenue.[1] Fixed or unavoidable costs are by definition unrelated to the individual income producing activity and thus are not relevant to the change in net profit calculation. *See, e.g.,* W. Meigs & R. Meigs, *Accounting: The Basis For Business Decisions,* 881–84 (5th ed.1981).

Fixed costs remain the same over a relevant range of activity for a given time period; whereas, variable costs change in total in relation to changes in total activity. *See* C. Horngren & G. Foster, *Cost Accounting,* 22–24 (6th ed.1987). Whether a cost is fixed or variable depends upon and may change with the specific inquiry. For example, if at a business facility, a single activity was being conducted, all costs, whether denominated as fixed or as variable for financial reporting purposes, should be taken into account in determining the effect on net profit of the termination of that activity. Under these circumstances, all costs would eventually be variable because at some point after all activity ceases all costs would cease.[2] If at a business facility more than one activity was being conducted, however, in calculating the effect on net profit from terminating one of them, fixed overhead costs would be irrelevant.

A simple example, hypothetical for purposes of this case, illustrates that fundamental principle. Let us assume Kutner is selling AMC and General Motors products at Bustleton Avenue with these results:

| | General Motors | AMC | Total |
|---|---|---|---|
| Revenue | 1,000 | 1,000 | 2,000 |
| − Variable Costs | −300 | −600 | −900 |
| Contribution toward Fixed Costs and Net Profit | 700 | 400 | 1,100 |
| − Fixed Costs | −500 | −500 | −1,000 |
| Net Profit (loss) | $ 200 | ($100) | $ 100 |

In the illustration, if fixed costs are attributable to the AMC sales, that part of the business appears to be operated at a loss. In reality, however, the termination of the AMC activity would not increase net profits, because the $500 in fixed costs attributed to that activity will not be avoided. The effect would be as follows:

| | General Motors Alone | |
|---|---|---|
| Revenue | 1,000 | |
| − Variable Costs | −300 | |
| Contribution toward Fixed Costs and Net Profit | 700 | |
| − Fixed Costs | −1,000 | (500 + 500) |
| Net Profit (loss) | ($300) | |

Terminating the AMC activity in the hypothetical example turns a $100 net profit into a $300 net loss—a $400 adverse effect. As a matter of arithmetic, and thus as a matter of both fact and law, fixed costs are irrelevant to the termination of loss of net profit from the determination of a business activity. The only proper focus is revenue generated less variable costs, which equals contribution to fixed costs and net profit. The premise, therefore of the district court's ruling on the admissibility of damages evidence, and on the Rule 50 motion, was totally unsound. This is not to say that there is no room for differences of opinion as to which costs are fixed and which are variable. Thus at a new trial AMC should be permitted to cross-examine Kutner's damage witnesses with respect to fixed versus variable costs, and to offer conflicting evidence if any is available. The jury should be instructed, however, that if AMC breached its contract, fixed costs at Bustleton Avenue are irrelevant to the determination of lost profits from that breach.

### C.

### Evidence of the Contract

■ As an alternative ground for affirmance of the dismissal of Kutner's contract

1. In economic terms, lost net profit from cessation of an activity may be measured by lost marginal revenue less marginal costs avoided. Fixed or unavoidable costs are irrelevant.

2. A cost may be fixed for one time period but avoidable over a longer time period. *See e.g.,* *Martin Motor Sales v. Saab–Scania of Am.,* 452 F.Supp. 1047, 1054 (S.D.N.Y.1978), *aff'd without opinion,* 595 F.2d 1209 (2d Cir.1979) (overhead attributed to activity fixed for one year but avoidable thereafter).

claim, AMC contends that its Rule 50 motion should have been granted on the ground it did advance, insufficient proof of the existence of a contract for territorial exclusivity.[3] Kutner presented the evidence both of Jules Kutner and of Mr. Carroll, the AMC zone manager who negotiated for the franchise. Jules Kutner testified that territorial exclusivity was to be coterminous with the franchise. Carroll was uncertain about the duration but conceded that there was some provision for exclusivity. AMC's theory is that because these witnesses disagreed about duration, Kutner failed to make out a prima facie case for the existence of a contract.

The sufficiency of evidence of a contract is determined in this diversity case by Pennsylvania law. Jules Kutner's testimony made out a prima facie case, by parol evidence of an oral agreement, supplementing the ten-year written agreement, that there would be territorial exclusivity for its duration. Carroll's testimony supported that prima facie case to the extent of reenforcing Jules Kutner's testimony that there was to be some period of territorial exclusivity. At most there arose from the evidence a fact issue as to duration—an issue which under Pennsylvania law was to be resolved by the factfinder. *See, e.g., Yuhas v. Schmidt,* 434 Pa. 447, 457, 258 A.2d 616, 621 (1969); *Kirk v. Brentwood Manor Homes,* 191 Pa.Super. 488, 493, 159 A.2d 48, 51 (1960). Thus we reject AMC's contention that we should affirm the dismissal of Kutner's contract claim on the ground that it did not make out a prima facie case for the existence of a contract for territorial exclusivity.[4]

### D.

### Binding Instruction

■ Kutner urges that the trial court erred in rejecting its request for a binding

instruction that there was an oral contract for territorial exclusivity. Kutner requests that this court require such an instruction in a new trial. The basis for Kutner's contention is the ruling of a different trial judge, who denied a pretrial motion by AMC for summary judgment. That judge held that there was a material issue of disputed fact as to the duration of the exclusivity term. Kutner contends that the existence of that term, as distinguished from its duration, was established by the summary judgment ruling.

The denial of a motion for summary judgment is an interlocutory ruling which establishes no more than that on the summary judgment record there are fact issues which should be submitted to the trier of fact. Since the record at a trial may be different, such a preliminary ruling does not determine what issues should be submitted to the jury. Thus we reject Kutner's contention that on remand a binding instruction on the existence of a contract for territorial exclusivity of some duration must be given. The trial court should rule on that request in light of the evidence presented on the issue at a new trial.

### E.

### Evidence on Mitigation

■ As an additional ground for excluding the damage calculation prepared by Kutner's expert witness, Adams, the district court appears to have assumed that it was the plaintiff's burden to include in the calculation all offsets which would be proper mitigation of damages. Kutner's evidence established its unsuccessful efforts to obtain a second franchise for the Bustleton Avenue location. The Buick activity at the location was already in place. If, beyond this, AMC wanted to argue that Kut-

---

**3.** Kutner urges that because AMC did not file a cross-appeal we should not consider this contention. AMC does not, however, seek to enlarge its rights beyond those granted in the order appealed from. Thus no cross-appeal was necessary. *Morley Co. v. Maryland Casualty Co.,* 300 U.S. 185, 191, 57 S.Ct. 325, 327, 81 L.Ed. 593 (1937).

**4.** The jury's first note to the court reads:

We cannot come to a unanimous decision concerning Kutner Buick and AMC. We all agree that there is a contract. But we do not agree whether or not there is a Breach in the Contract? So where do we go from here? App. 727.

ner failed to act reasonably in mitigating damages (for example, by continuing to incur overhead costs which could have been eliminated without harm to the remaining business) the burden was on AMC to come forward with such evidence. *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524, 529 (3d Cir.1978). Thus, in ruling on the admissibility of the report prepared by Kutner's damage expert, the court misapprehended the legal rule as to burden of proof on mitigation. The report should have been admitted. It could, of course, be rebutted.

### F.

### Exhibit 43

Kutner offered in evidence exhibit 43, an internal AMC memorandum which reads in part:

*State Franchise Law*

The Pennsylvania State Legislature is presently considering a revised Motor Vehicle Franchise Law. The proposed law would allow similar line auto dealers the right to protest and block the establishment of a new dealer within an eight-mile radius. The Zone has been advised that this law could be approved as early as mid-September 1983. It is therefore extremely important that this franchise proposal be approved at the earliest date because it would be expected that Kutner Buick/AJR, who is approximately five miles from Potamkin, would utilize the new law to block Potamkin's Franchise.

App. 157. Kutner offered the exhibit as evidence of AMC's motive for breaching its agreement by appointing Potamkin Motors as a dealer in north Philadelphia. AMC argued that the exhibit was unduly prejudicial. *See* Fed.R.Evid. 403. The record contains colloquy between the court and counsel that might be construed as a Fed.R.Evid. 401 ruling on relevancy. No explicit reason for the court's ruling excluding it appears. We agree with Kutner that exhibit 43 appears to be relevant for purposes of Rule 401. We decline, however, to foreclose the trial court's discretionary ruling under Rule 403 with respect to the exhibit should it be offered at the new trial.

## II.

### The Fraud Claim

Kutner contends that the trial court erred in granting AMC's motion for a directed verdict on the fraud claim at the end of the entire trial. Exercising plenary review, we must determine if the record is critically deficient of a minimum quantum of evidence from which the jury could find the elements of fraud under Pennsylvania law. These are (1) a misrepresentation; (2) known to be false; (3) intended to induce action; (4) justifiable reliance on the misrepresentation; and (5) damages as a proximate result. *E.g., Delahanty v. First Pa. Bank*, 318 Pa.Super. 90, 108, 464 A.2d 1243, 1252 (1983). Kutner's theory is that there was a misrepresentation with respect to AMC's intention about territorial exclusivity, which induced it to take on the AMC franchise.

We conclude that the directed verdict was proper. There is evidence from which it could be found that AMC's agents represented AMC's intention to franchise no more than one dealer in northeast Philadelphia. There is no evidence, however, from which reasonable jurors could infer that AMC had a different intention when that representation was made. Indeed there is evidence that, initially, AMC acted consistently with the expressed intention by turning down a request for a franchise in that territory. Thus the record is devoid of at least one critical element of proof on Kutner's fraud claim.

## III.

### Conclusion

The judgment in favor of AMC on Kutner's claim for breach of contract will be reversed and the case remanded for a new trial which shall be conducted consistent with this opinion. The judgment in favor of AMC on Kutner's fraud claim will be affirmed.