999 F.2d 540
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Karl L. JONES, Plaintiff-Appellant,
v.
Priscilla BLANCHARD and City of Kent, Defendants-Appellees.
 No. 92-3719.
 United States Court of Appeals, Sixth Circuit.
 July 16, 1993.
 
 Before: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Karl L. Jones appeals the district court's judgment in favor of defendants, the City of Kent, Ohio, and Priscilla Blanchard, Director of Public Service for the City of Kent, on plaintiff's claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., alleging he was discharged from his employment with the City on the basis of his race. On appeal, the issues are (1) whether the district court erred in holding that plaintiff failed to establish a prima facie case of race discrimination under the McDonnell Douglas v. Green framework, and (2) whether the district court erred in holding that plaintiff had failed to establish a prima facie case of disparate treatment in regard to his absences from work which ultimately resulted in his discharge. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Plaintiff Jones is a black male who was formerly employed by the City in the Central Maintenance Division as a repair operator from 1968 through March 1989. He had a long history of excessive sick leave use and absences dating from the start of his employment.[1] While it appears from the record that plaintiff was genuinely ill or injured at the time that he took sick leave, he frequently took more sick leave than he had actually earned. This excessive sick leave use was documented throughout the 1970's and 1980's, and plaintiff was warned on many occasions that he had used more sick leave than he had earned. Plaintiff also failed to keep the City informed as to the status of his absences and when he would be able to return to work.
 
 
 3
 Defendant Priscilla Blanchard first became the Director of Public Service for the City in 1984. The problem of excessive sick leave use in the maintenance division as a whole was costing the City a significant amount of money and interfering with the operation of essential city services. As a result, Blanchard reviewed each employee's use of sick leave and wrote to those employees who were missing substantial amounts of work to determine the nature of their problems and when they could be expected to return to work.
 
 
 4
 Plaintiff Jones was absent from work from September 1983 to September 1984 due to coronary artery disease. In July and August of 1984, Blanchard wrote plaintiff about his serious attendance problem and the fact that his doctor had indicated he was totally disabled due to coronary artery disease. She then suggested he take disability retirement. Plaintiff refused the offer of disability retirement and returned to work because he wished to continue working for two more years until he would be eligible for a full retirement pension.
 
 
 5
 On January 7, 1985, plaintiff had open heart surgery; he returned to work in November 1985. In September 1986, Blanchard sent a warning letter to plaintiff noting the extensive use of sick leave without pay during 1986 and questioned whether he could safely perform the duties of a repair operator. Plaintiff subsequently injured his back on the job, and in December 1986 he wrote Blanchard informing her that he intended to apply for workers' compensation benefits for about four weeks to compensate his loss of pay and, therefore, he did not need to request a leave of absence from the City. Blanchard responded in January 1987 that even though plaintiff may receive workers' compensation benefits, he must still apply for a leave of absence. She also stated that plaintiff's failure to provide medical documentation or medical certificates for his injury was grounds for disciplinary action but that she would grant him a leave of absence. Jones then requested an extension of the leave of absence to February 17, 1987. On February 5, 1987, Blanchard approved plaintiff's request for an extension but warned that his attendance record over the past four years was poor and that continued absences for whatever reason could result in dismissal. Plaintiff worked only 56 percent of all full days in 1986 and 59 percent of all full days in 1987.
 
 
 6
 On March 11, 1987, plaintiff Jones and Blanchard met regarding an unexcused absence on March 6, 1987. Blanchard subsequently recommended a one-day suspension based upon plaintiff Jones' failure to provide a work release. This suspension was later reduced to a warning in the grievance process. Finally, on February 23, 1988, after further absences, Blanchard recommended termination of Jones' employment. The proposed termination was later reduced to a two-week unpaid suspension in accordance with the labor union's contract provision for progressive discipline. This suspension was later upheld in an arbitration proceeding. Jones then filed a race discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC") which, after an investigation, was dismissed for lack of probable cause.
 
 
 7
 In 1988, plaintiff worked only 27 percent of his scheduled work days and used 56 hours of sick leave and 960 hours of unpaid leave. In addition, a physician preparing an independent medical evaluation of plaintiff at the request of the City stated that he could not comment at that time whether Jones would ever be able to return to work. Blanchard then sent Jones a notice of proposed termination on February 2, 1989. After a hearing, the proposed termination was upheld, and Jones was terminated on March 3, 1989. Jones contends that at the time of his termination, he was on workers' compensation leave due to his job-related back injury.
 
 
 8
 Plaintiff Jones filed a grievance to challenge the discharge, but his grievance was found to be meritless. Plaintiff then filed charges of race discrimination with the EEOC and OCRC; however, both agencies dismissed the charges finding that the City had cause to terminate plaintiff's employment.
 
 
 9
 Subsequently, in July 1990, the Ohio Industrial Commission changed plaintiff's status for purposes of workers' compensation benefits from temporarily totally disabled to permanently totally disabled due to the effects of his back injury.
 
 B.
 
 10
 Plaintiff Jones filed his complaint against the City and Blanchard in district court on July 16, 1990. A trial was held on March 12, 1992, before the magistrate judge pursuant to 28 U.S.C. § 636(c)(1). On June 17, 1992, the magistrate judge issued findings of fact and conclusions of law in favor of defendants and dismissed plaintiff's action stating that plaintiff failed to prove a prima facie case of race discrimination. Final judgment was entered in favor of defendants on July 15, 1992. This timely appeal followed.
 
 II.
 A.
 
 11
 We review a trial court's findings regarding a claim of discrimination brought under Title VII under the clearly erroneous standard of Federal Rule of Civil Procedure 52(a). Jackson v. RKO Bottlers of Toldeo, Inc., 743 F.2d 370, 374 (6th Cir.1984). Findings of the trial court are clearly erroneous when, upon review of the entire record, "the court is left with a definite and firm conviction that a mistake has been committed." Id.
 
 B.
 
 12
 Plaintiff argues that the magistrate judge erred in finding that he had failed to establish a prima facie case of race discrimination as required by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case under McDonnell Douglas for the termination of a plaintiff's employment on the basis of race, the plaintiff must show that (1) he was a member of a protected class, (2) he was discharged, (3) he was qualified for the position, and (4) he was replaced by a person outside the protected class. Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992).
 
 
 13
 The magistrate judge found that plaintiff failed to establish a prima facie case under McDonnell Douglas because plaintiff failed to show that he was qualified for the position of repair operator due to his prolonged inability to come to work on a full-time and regular basis. In his brief, plaintiff does not challenge the district court's finding that he was not qualified for the position of repair operator. Rather, he argues that he was treated differently from white employees in regard to his excessive absences, an argument which is better suited to his second issue in this appeal. In sum, plaintiff has referred to no evidence in the record which would lead us to determine that the district court was clearly erroneous in its finding that plaintiff was not qualified for the position of repair operator and that plaintiff therefore failed to establish a prima facie case under McDonnell Douglas.
 
 C.
 
 14
 Plaintiff also argues that the magistrate judge erred in his claim of disparate treatment finding that plaintiff was not treated differently from white employees on the basis of his race in regard to his absenteeism which ultimately resulted in his discharge. In addition to the McDonnell Douglas framework for a prima facie case, a plaintiff can also establish a prima facie case of discrimination under Title VII where the plaintiff can show that (1) he was a member of a protected class and (2) he was treated differently than similarly situated nonminority employees for the same or similar conduct. Mitchell, 964 F.2d at 583; Davis v. Monsanto Chemical Co., 858 F.2d 345, 347 (6th Cir.1988), cert. denied, 490 U.S. 1110 (1989). Similarly-situated individuals are those who "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583. Where a plaintiff establishes such a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for treating the plaintiff differently. Id. at 584.
 
 
 15
 Plaintiff makes a number of general factual contentions to support his argument that the magistrate judge erred in finding for the defendant on his claim of disparate treatment under Title VII. However, plaintiff makes no attempt in his brief to engage in an in-depth factual analysis to bolster his general factual contentions. Rather, plaintiff cursorily refers to the record and leaves it for us to ferret out the details to support his contentions. Having reviewed the record as a whole, we find no facts which would lead us to conclude that the magistrate judge's findings in regard to plaintiff's disparate treatment claim are clearly erroneous.
 
 
 16
 Plaintiff first contends that white employees who also missed substantial amounts of work were allowed to remain employed with the City. The record shows and the magistrate judge found that two white employees, Mark Levingood and Kenneth Deacon, both had work records with extensive absences due to illness and work-related injuries. However, defendant Blanchard testified, and the magistrate judge found, that Deacon and Levingood were not terminated from their positions because their physical conditions indicated that they would be able to return to work full time. On the other hand, plaintiff's physical condition indicated that he may never be able to resume his duties full time. Therefore, the magistrate judge concluded that Deacon and Levingood were not similarly situated employees because of the expectation that they would be able to return to work and plaintiff would not.
 
 
 17
 The record also shows that Michael Egantoff had a work record with substantial absences due to a physical disability. The magistrate judge found that Egantoff, like plaintiff, was subject to disciplinary action for abuse of sick leave and that he, like the plaintiff, was given the opportunity to take disability retirement in order to avoid further disciplinary action. Egantoff, however, unlike plaintiff, accepted the City's offer and took disability retirement. Thus, the magistrate judge concluded that Egantoff was treated no differently than plaintiff; plaintiff simply refused to accept the City's offer to take disability retirement and was therefore discharged.
 
 
 18
 Plaintiff also argues that he was treated differently in regard to the offer of disability retirement because the City offered disability retirement if he would drop his discrimination claims against the City whereas Egantoff was simply offered the opportunity to take disability retirement. However, the record shows that plaintiff was offered disability retirement several times before he filed charges with the EEOC and the OCRC, and, in any event, Egantoff had not filed a claim with the EEOC or the OCRC. It would have been impossible to make an offer of disability retirement contingent upon Egantoff's dropping such claims. Thus, plaintiff's argument in this regard is also meritless.
 
 
 19
 Plaintiff also argues that the City utilized different criteria for sick leave for plaintiff and for white employees. He maintains that much of his sick leave should have been treated as leave for workers' compensation as it was for white employees, Levingood and Deacon. However, the magistrate judge found, and the record supports the finding, that, unlike Levingood and Deacon, plaintiff frequently failed to report the status of his absences to the City and that plaintiff informed the City only on two occasions since 1986 that he was taking workers' compensation leave.
 
 
 20
 Plaintiff next argues that the City allowed a white employee with disabilities to work on a restricted basis whereas it refused that same opportunity to plaintiff, requiring him instead to return to work full time with no restrictions. Paul Petrella, a white employee, was hired in 1991 after plaintiff was discharged. Petrella, who suffers from a disability as a result of a broken arch in his foot which occurred while on duty as a police officer, occupies the position of a "laborer," which is not as physically demanding a position as that of repair operator. The magistrate judge found that Petrella was not a similarly situated employee with whom plaintiff could compare himself because Petrella was not totally disabled and could report to work regularly and sustain reduced work activities. On the other hand, plaintiff was totally disabled as evidenced by his workers' compensation claim and was unable to report to work regularly.
 
 
 21
 In addition, plaintiff argues that the "existence of prior discrimination activity by the city" is evidence that he was discharged because of his race. Plaintiff's brief at 6. Presumably, plaintiff is referring to the complaint he filed with the EEOC in 1984 against the City alleging racial discrimination for failing to promote him to foreman. An action was filed in district court, and the parties settled the matter for $5,000. However, plaintiff refers to no evidence from this action which indicates any racial animus on the City's part. The mere fact that the City settled with plaintiff does not establish racial animus in regard to its discharge of plaintiff.
 
 
 22
 Finally, plaintiff appears to argue that because the magistrate judge refused to grant defendants' pretrial motion for summary judgment, the magistrate judge found conclusively that plaintiff had established a prima facie case. This argument is flawed. The magistrate judge refused to grant summary judgment to defendants because, considering all the evidence in the light most favorable to plaintiff, he found that a genuine issue of material fact existed regarding whether plaintiff had proven a prima facie case of disparate treatment. At trial, the court is free to weigh the evidence and then determine conclusively whether plaintiff has successfully established a prima facie case, which is what the magistrate judge did in this case. See Kutner Buick, Inc. v. American Motors Corp., 868 F.2d 614, 619 (3d Cir.1989) ("The denial of a motion for summary judgment is an interlocutory ruling which establishes no more than that on the summary judgment record there are fact issues which should be submitted to the trier of fact.").
 
 
 23
 In sum, plaintiff has referred to no evidence in the record which would lead us to conclude that the magistrate judge's findings are clearly erroneous. Furthermore, having carefully reviewed the record, we see no such evidence which would lead us to conclude that the magistrate judge's findings are clearly erroneous.
 
 III.
 
 24
 For the reasons stated, the judgment in favor of defendants is AFFIRMED.
 
 
 
 [1]
 The magistrate judge in his opinion has set forth a detailed and lengthy history of plaintiff's absentee difficulties