

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-5-2007

# Ridley v. Costco Whsle

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5134

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ridley v. Costco Whsle" (2007). *2007 Decisions*. Paper 1680.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1680

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 05-5134 and 06-1690

HILTON M. RIDLEY
v.
COSTCO WHOLESALE CORP.,
Appellant No. 05-5134

HILTON M. RIDLEY,
Appellant No. 06-1690
v.
COSTCO WHOLESALE CORP.

Appeals from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 04-cv-03860)
District Judge: Honorable Juan R. Sanchez

Argued January 8, 2007

Before: SLOVITER and RENDELL, Circuit Judges,
and IRENAS*, District Judge.

(Filed February 5, 2007)

_____

* Honorable Joseph E. Irenas, Senior District Judge for the District of New Jersey, sitting
by designation.

Devjani Mishra
Seyfarth Shaw
1270 Avenue of the Americas
Suite 2500
New York, NY  10020-1801

Lynn A. Kappleman      **[ARGUED]**
Seyfarth Shaw
Two Seaport Lane
Boston,, MA 02210
    *Counsel for Appellant/Cross Appellee*

Carmen R.  Matos
Stewart, Wood & Matos
411 Cherry Street
Norristown, PA  19401

Ralph E.  Lamar, IV      **[ARGUED]**
141 Spruce Lane
Collegeville, PA  19426
    *Counsel for Appellee/Cross-Appellant*

---

OPINION OF THE COURT

---

RENDELL, *Circuit Judge*.

Hilton Ridley sued his former employer, Costco Wholesale Corporation

("Costco") for retaliatory demotion and retaliatory constructive discharge under Title VII

and the Pennsylvania Human Rights Act.  On October 17, 2005, after a seven-day jury

trial, the jury returned a verdict for Costco on the retaliatory demotion claim and for

Ridley on the retaliatory constructive discharge claim.  Costco appeals the District

Court's denial of its motion for judgment as a matter of law on the constructive discharge

claim and the denial of its motion to vacate or reduce the jury award of $200,000 for Ridley's emotional distress damages.

Ridley cross-appeals, challenging the orders of the District Court granting summary judgment to Costco on Ridley's claim for punitive damages, denying Ridley's motion to file an overlength brief in response to defendant's motion for summary judgment, denying Ridley's request for an hourly rate of $375 for one of his attorneys, and denying Ridley's request for attorneys' fees for work performed by Ridley's counsel during the Pennsylvania Human Rights Commission ("PHRC") administrative proceedings.

## I.

Ridley was hired by Costco in 1987 and was gradually promoted to the position of Merchandise Manager in Costco's Lancaster, Pennsylvania warehouse. On August 28, 2000, Ridley received a counseling notice following a conflict between Ridley and his immediate supervisor concerning the appropriate procedures for Ridley to use to request a Sunday off from work. Ridley was then transferred back to his previous position as Receiving Manager. Following Ridley's receipt of the August 2000 counseling notice, he complained to Regional Vice President Yoram Rubanenko and East Coast Senior Vice President Jeff Long that he was being treated unfairly and believed that his race was the reason.

Long requested that Judy Vadney, Costco's Director of Personnel, conduct an

3

investigation of Ridley's complaint. Vadney's notes from her conversation with Long indicate that Long told her that there might be some sexual harassment issues with Ridley. Vadney also took notes from a conversation with another, unidentified person who asked Vadney to look into allegations of sexual harassment and spousal abuse by Ridley and to look for "smoking guns, any problems." After interviewing warehouse employees, Vadney submitted a written report summarizing the interviews she had conducted. She did not make any factual findings in this report as to the validity of Ridley's complaint. Long testified that after the report was completed, he notified Ridley in a letter dated October 26, 2000 that Vadney had found no evidence of discrimination or harassment in her investigation. Ridley testified that he did not receive the October 2000 letter until sometime in 2001. Long also testified that he later sent Ridley a memo dated December 28, 2000, in which he invited Ridley to meet with him to discuss the investigation results. Ridley did request a meeting, which was eventually scheduled for April 11, 2001.

On April 10, 2001, Ridley was involved in an incident at the Lancaster warehouse involving a forklift. Ridley operated a forklift which he used to lift another employee up to reset the radio frequency receiver in the warehouse, in the presence of two Costco managers. Ridley did not use a safety cage, in violation of the Costco safety rules, and was given a counseling notice later that morning. Ridley met with Long on April 11, but only briefly discussed the discrimination complaint. Most of the meeting was spent

4

discussing the forklift incident.

Following the incident, Ridley was demoted to the position of front-end supervisor and was transferred to Costco's Christiana, Delaware warehouse. The warehouse was located more than 60 miles from Ridley's home, resulting in a commute of 1.5 to 2 hours in each direction. The Christiana warehouse manager, Glenda Tuttle, received a copy of Ridley's personnel file when he transferred to her store, but testified that she was not aware of Ridley's discrimination complaint.

After the transfer, Ridley received three counseling notices during a five week period. Ridley was counseled on April 24, 2001 for moving a scrubber in which someone had left the cord under the hood; on May 5, 2001 for excessive absences, some of which Ridley alleges were covered by the Family and Medical Leave Act; and on May 26, 2001 for leaving $126.00 in cash in his work vest pocket, which Ridley returned to the register as soon as he realized his inadvertent error. After receiving the first two notices, Ridley wrote a letter to Long complaining about what he perceived to be retaliation by Costco. In this letter, Ridley noted the hardships created by his $17,000 reduction in salary and the long commute to Christiana. On cross-examination, Long testified that he did not understand from this letter that Ridley was complaining of retaliation. Long's response to Ridley's complaint was to resend his October 2000 letter to Ridley, writing that we will "consider the matter closed unless you contact me directly." Long also testified that he asked another Costco employee to look into

Ridley's claim that his absences were covered by the FMLA.  However, Tuttle testified that no one had ever mentioned Ridley's complaint about the counseling notice for excessive absences to her.

Following the receipt of the third counseling notice, Ridley tendered his resignation on June 13, 2001.  Long had sent Ridley a letter dated June 6, 2001, offering Ridley the opportunity to be considered for a position at the Harrisburg, Pennsylvania warehouse.  Ridley was informed on June 13 that this letter had arrived for him at Christiana, but he did not receive it until June 16, at which point he had already resigned his employment at Costco.

## II.

The District Court had jurisdiction over Ridley's claims pursuant to 28 U.S.C. § 1331 and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We exercise plenary review over the District Court's denial of Costco's motion for judgment as a matter of law.  Applying the same standard used by the District Court, we must "draw all reasonable inferences in favor of the nonmoving party" and we "may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).  In reviewing the record as a whole, we must "disregard all evidence favorable to the moving party that the jury is not required to believe" and "give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to

6

the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151. The District Court's denial of Costco's motion for a new trial and for remittitur of the jury's damage award is reviewed for abuse of discretion. *Brennan v. Norton*, 350 F.3d 399, 431 & n.25 (3d Cir. 2003).

We review de novo the District Court's grant of summary judgment to Costco on the issue of punitive damages. *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001). The District Court's order denying plaintiff's motion to file an overlength brief in opposition to defendant's motion for summary judgment and order on Ridley's request for an award of attorneys' fees are reviewed for abuse of discretion. *Washington v. Phila. County Ct. Com. Pl.*, 89 F.3d 1031, 1034 (3d Cir. 1996)(attorneys' fees).

### III.

**A. Costco's Motion for Judgment as a Matter of Law**

Costco first argues that the District Court erred by denying its motion for judgment as a matter of law on Ridley's retaliatory constructive discharge claim because Ridley failed to show that his Delaware managers had knowledge of his discrimination complaint.[1] Costco contends that the jury could not have concluded from the evidence

---

[1] Ridley argues that Costco has waived this argument because it was not raised in Costco's Rule 50(a) motion before the District Court. *See Kutner Buick, Inc. v. Am. Motors Corp.*, 868 F.2d 614, 617 (3d Cir. 1989)**.** However, we need not address the waiver issue because we reject Costco's argument on the merits.

presented at trial that Glenda Tuttle or any of the other managers at Christiana were aware of Ridley's complaint of discrimination, and therefore could not have concluded that the managers' actions were undertaken in retaliation for Ridley's complaint.

The evidence from which a jury could find that Tuttle knew about Ridley's complaint of discrimination is circumstantial, but sufficient to support the jury's finding in favor of Ridley on his retaliatory constructive discharge claim. Tuttle testified that she spoke to Costco Regional Vice President Paul Pulver about Ridley's transfer, received Ridley's personnel file after Ridley transferred to Christiana, and was aware that Ridley had been transferred to Christiana following his demotion for a workplace incident involving a forklift. However, Tuttle denied knowing about Ridley's discrimination complaint. Long testified that Tuttle "would have been aware of any documentation" in Ridley's file "pertaining to any disciplinary action." The jury could have rejected Tuttle's testimony and reasonably inferred that Tuttle had in fact learned about Ridley's discrimination complaint from his personnel file. *Cf. Black v. Stephens*, 662 F.2d 181, 190 n.7 (3d Cir. 1981)(finding that, despite police officer's testimony that he was unaware of a particular police regulation, it was reasonable for the jury to find that the officer had knowledge of his department's rules and regulations based on the police chief's testimony that each officer was issued a book containing the department's specific code of discipline and penalties). The inference that Tuttle knew about Ridley's complaint is further supported by the evidence that Tuttle subjected Ridley to repeated

8

discipline for minor incidents shortly after he began work at Christiana. The evidence established that Tuttle issued three counseling notices to Ridley within a five week period, but that Ridley, prior to his transfer to Christiana, had only received one counseling notice in his thirteen years with the company. Ridley's testimony that Tuttle seemed "reluctant" to give him these counseling notices further supports the inference that Tuttle was aware that Ridley's conduct did not merit the punishment that she imposed on him and that she had other motives for issuing these counseling notices.

We note that the jury was free to discredit Tuttle's testimony that she was not aware of Ridley's discrimination complaint. Tuttle was a Costco employee that took disciplinary action against Ridley and, as such, was not a "disinterested witness." We must also disregard this portion of Tuttle's testimony in determining whether there was sufficient evidence for the jury to find that Tuttle knew about Ridley's discrimination complaint. *See Reeves*, 530 U.S. at 151; *see also Hill v. City of Scranton*, 411 F.3d 118, 131 n.22 (3d Cir. 2005)(citing *Reeves* and noting that on a summary judgment motion, a court "should not consider even uncontradicted testimony of an interested witness where that testimony supports the movant").

Furthermore, Ridley's claim for retaliatory constructive discharge was not based solely on the actions of the managers at Christiana. The evidence of Costco's post-demotion retaliation included evidence that Long, who unquestionably knew about Ridley's discrimination complaint, transferred Ridley to Christiana and then did nothing

9

to investigate Ridley's allegations of post-demotion retaliation contained in his May 15, 2001 letter to Long. The jury also considered these decisions by Long as part of Ridley's claim that Costco retaliated against him following his demotion.

Costco further challenges the District Court's denial of its motion for judgment as a matter of law on the additional grounds that Ridley's constructive discharge was inextricably intertwined with his demotion, that Ridley failed to show pretext in Costco's decisions after the demotion, and that Ridley presented no evidence that Costco knowingly permitted him to suffer "intolerable working conditions." As to the first argument, Costco's actions following Ridley's demotion were not so "inextricably" intertwined with the demotion so as to prevent the jury from finding that, although the demotion was not retaliatory, Costco's subsequent actions were. There was sufficient evidence presented at trial for the jury to conclude that Costco's post-demotion actions -- transferring Ridley to the Christiana warehouse, issuing three counseling notices to him during a five week period for minor incidents, and failing to respond to or investigate his complaint that these actions were retaliatory -- were motivated by considerations different than those that prompted Costco to demote Ridley and were undertaken in retaliation for Ridley's complaint of discrimination.

As to Costco's second challenge, although Costco argued at trial that its post-demotion decisions regarding Ridley were based on non-retaliatory considerations, there was sufficient evidence presented for the jury to find that these explanations were

10

pretextual. Even though Ridley admitted to engaging in the conduct that resulted in the issuance of the counseling notices, the jury could have found that Costco's punishment was greater than Ridley's conduct deserved and that Costco used these minor incidences as an excuse to retaliate against Ridley. Moreover, Long's failure to look into Ridley's May 15, 2001 retaliation complaint, which followed Ridley's transfer and his receipt of two counseling notices within a few weeks of the transfer, further supports the conclusion that the reasons offered by Costco for its post-demotion actions against Ridley were pretextual and offered to cover up its retaliatory motives.

As to the sufficiency of the evidence that Costco knowingly permitted Ridley to suffer "intolerable working conditions," Costco argues that Long's invitation to Ridley to apply for a transfer to the Harrisburg, Pennsylvania warehouse precluded the jury from finding that Ridley had been constructively discharged and that the verdict for Ridley on this claim must therefore be reversed. However, under the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006), Ridley was not required to prove that he was constructively discharged in order to prevail on his claim for Title VII retaliation based on the actions taken by Costco after Ridley's demotion. Our decision in *Robinson v. Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997), in which we held that a challenged action must "alter an employee's compensation, terms, conditions, or privileges of employment" in order to be actionable as retaliation under Title VII, was abrogated by *Burlington Northern*. In *Burlington Northern*, the Court held

11

that in order to show retaliation under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 126 S. Ct. at 2415 (internal quotations omitted).

We therefore need not determine whether there was sufficient evidence for the jury to find that Costco's actions cumulatively amounted to a "constructive discharge" because, under *Burlington Northern*, the jury was not required to make this finding in order to return a verdict in favor of Ridley on his retaliation claim based on these actions. We need only determine whether there was sufficient evidence to support the jury's finding, implicit in the finding that these actions constituted a "constructive discharge," that Costco's post-demotion actions against Ridley were "materially adverse." *See id.* at 2416 (reviewing the evidence in support of plaintiff's retaliation claim to determine whether there was sufficient evidence to support a finding that the employer's actions were "materially adverse," and not addressing whether there was sufficient evidence to support the jury's actual finding that the alleged actions were actionable under the substantive antidiscrimination provision of Title VII). We conclude that the evidence was sufficient for the jury to find that Costco's actions following Ridley's demotion "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (internal quotations omitted). We will accordingly affirm the District Court's denial of Costco's motion for judgment as a matter of law.

12

**B. Costco's Motion to Vacate or Reduce the Damages Award**

Costco also argues that District Court erred in failing to vacate or reduce the jury award of $200,000 in emotional distress damages because Ridley testified only to "garden-variety" emotional distress and attributed this distress to his demotion and his resulting decrease in pay, which the jury found was not retaliatory. Upon review of Ridley's testimony, we conclude that Costco misconstrues Ridley's testimony as to the cause of his distress. The evidence presented at trial concerned not only Ridley's reaction to his demotion, but also his emotional distress connected with Costco's subsequent actions. Although the question Ridley was asked at trial was "how did it make you feel for Costco to demote you?," Ridley's response clearly addressed not only the demotion, but also the transfer and his eventual departure from the company. Ridley replied: "Emotionally, it was like a marriage to me. I mean, and once we departed, or once it was over, I felt hurt and betrayed." In response to the next question, "how did it effect, if at all, the way you acted around your wife and children?," Ridley replied: "Things were difficult. My wife was concerned about the financial part of it. I told her we'll make it. It brought hardship or frustration within the home my me being on the road for three hours or so back and forth to work. That didn't leave me with enough time to help her out around the house. And I would find, I didn't understand it, but I would find for myself that I was harping on things that probably should have been done, and not realizing that the only reason they got done in the first place [was] because she had help

13

from me. So it made life difficult at home." Ridley also began openly crying at points while reading his resignation letter at trial.

As to the sufficiency of the evidence presented to support an award of $200,000, we have previously upheld similarly large awards of emotional distress damages based on the testimony of non-medical witnesses. *See Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 573 (3d Cir. 2002)(upholding denial of motion for remittitur of $1.55 million award for pain and suffering that was based on testimony from plaintiff's co-workers and family that demonstrated the effects of the mental trauma that transformed plaintiff from a happy and confident person to one who was withdrawn and indecisive). At trial, Ridley presented his own testimony as to the distress that Costco's actions caused, as well as the testimony of his wife, Donna Ridley, who described the effect that Costco's actions had on her husband. Donna Ridley testified that after Ridley's transfer and demotion, "he had trouble sleeping, he lost weight, he was – he withdrew socially, at home, with our children. He was just nuts. He just wasn't the same." She testified that Ridley would be downstairs watching TV in the middle of the night when she would wake up, or in bed "he would just be laying there and he would say something to me when I woke up and I would ask him what was wrong and that's what he was thinking about. He just couldn't get it out of his mind." Donna testified that, up to the date of her testimony, Ridley was still depressed and had trouble sleeping. She also testified, as to her husband's self-esteem, that "I don't think he has any anymore. He was very – used to be a very

14

confident person and that – his sense of self worth disappeared."  Since there was sufficient evidence to support the jury's award of $200,000 in emotional distress damages, we conclude that the District Court did not abuse its discretion in denying Costco's motion to vacate or reduce the award and we will therefore affirm the District Court's denial of Costco's motion.

### C. Ridley's Claim for Punitive Damages

Ridley argues that the District Court erred in granting summary judgment to Costco on Ridley's claim for punitive damages.  To recover punitive damages for his Title VII claim, Ridley must have demonstrated that Costco "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).  An employer may be vicariously liable for the discrimination of its employee if the employee was serving in a "managerial capacity" and committed the wrong while "acting in the scope of his employment."  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 542 (1999).  However, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'"  *Id.* at 545.

The District Court granted summary judgment to Costco on Ridley's claim for punitive damages, noting that the undisputed facts demonstrated that Costco consistently made good faith efforts to implement and enforce its anti-discrimination policy.  Ridley

15

disagrees with this conclusion, arguing that the inadequacy of Vadney's investigation into his original discrimination complaint and Long's subsequent failure to investigate Ridley's allegations of retaliation create a genuine issue of fact as to whether Costco made a good-faith effort to implement and enforce its anti-discrimination policy. However, the undisputed evidence presented by Costco established that Costco maintained policies against discrimination and harassment and an Open Door policy for reporting complaints of discrimination or harassment. The evidence also showed that Costco trained new supervisors with respect to Costco's harassment complaint policy and provided supervisors with detailed materials regarding the supervisor's obligation to address discrimination issues. Costco also trained its warehouse and staff managers with regard to handling complaints of discrimination and instructed managers that such complaints were to be taken seriously. Despite the disputed issues of facts as to whether Vadney and Long's actions were adequate, a reasonable jury could not conclude from this evidence that the company did not make good-faith efforts to comply with Title VII. We will therefore affirm the District Court's grant of summary judgment to Costco on Ridley's punitive damages claim.

**D. Ridley's Motion to File an Overlength Brief**

Ridley also appeals the Court's denial of his request to file an overlength brief on the grounds that this refusal may have led to the Court's decision to grant Costco's motion for summary judgment on Ridley's punitive damages claim. The District Court

16

has a standing rule that imposes a 15 page limit on briefs to the Court. Ridley submitted a proposed 48 page brief that contained more detailed argument and more facts concerning the imposition of punitive damages. We find that Ridley had adequate opportunity to raise his arguments in opposition to Costco's motion in his 15 page brief and that it was therefore not an abuse of discretion for the District Court to deny Ridley's request to file an overlength brief.

**E. Ridley's Attorneys' Fees Request for Carmen Matos**

Ridley argues that the District Court erred in denying Ridley's request for an hourly fee of $375.00 for his attorney, Carmen Matos. The District Court found that Ridley did not meet his prima facie burden to establish that the $375.00 rate for Matos was reasonable because Matos' role in litigating the case was limited when compared with lead counsel's role and Matos admittedly undertook the case on a contingency basis. The Court did not, however, reduce lead counsel's hourly rate even though lead counsel also took the case on a contingency basis. There was no reasonable basis for the District Court to consider the contingency fee arrangement between plaintiff and Matos in determining the appropriate hourly rate for Matos, when the Court did not consider the fee arrangement between plaintiff and lead counsel in determining lead counsel's hourly fee. Similarly, there was no reasonable basis for reducing Matos' fee based on her limited role in the litigation. The District Court did not conclude that some or all of the work performed by Matos should or could have been performed by a less senior attorney

17

with a lower billing rate. The Court merely noted that Matos' "role in litigating this matter was limited when compared with lead counsel's efforts." However, Matos' limited role is already reflected in the number of hours she billed on the case. We find that the District Court erred in considering Matos' limited role in the litigation and the fact that she took the case on a contingency basis in determining whether Ridley established his prima facie case of reasonableness.

In support of his fee request, Ridley submitted affidavits from two experienced civil rights practitioners who opined that $375 is a fair and reasonable rate for someone of Matos' experience. Both practitioners were personally familiar with Matos. The District Court agreed that "Matos is undeniably an experienced litigator." Costco did not submit any affidavits as to a reasonable hourly rate for Matos, but objected to the hourly rate in its brief. This objection was not sufficient to allow the District Court to depart from the requested fee once Ridley made out his prima facie case of reasonableness. *See Washington v. Phila. County Ct. Com. Pl.*, 89 F.3d 1031, 1036 (3d Cir. 1996)(vacating attorneys' fee award entered by the district court that reduced counsel's hourly rate from $250 to $175 because party losing fee award failed to rebut submissions by plaintiff's counsel as to the reasonableness of counsel's hourly rate). We have previously noted that "[w]here, as here, the plaintiff has met his prima facie burden under the 'community market rate' lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate

18

downward." *Id.* We will therefore vacate the District Court's order granting attorneys' fees to Ridley to the extent that it reduced Matos' hourly rate from $375.00 to $300.00.

**F. Ridley's Attorneys' Fees Request for the PHRC Proceeding**

Ridley also appeals the District Court's denial of his request for attorneys' fees for work performed during the administrative proceedings before the Pennsylvania Human Rights Commission ("PHRC"). The District Court cited the Supreme Court's decision in *N.Y. Gas Light Club, Inc. v. Carey*, 447 U.S. 54, 71 (1980), in support of the proposition that although "Title VII authorizes recovery of attorney's fees for administrative proceedings, the complainant must have prevailed in those proceedings for a district court to order reimbursement of fees and costs." We find that *N.Y. Gas Light Club* does not dictate that the prevailing party must have prevailed in the administrative proceeding in order to recover fees for that proceeding. In that case, the Supreme Court held that "§§ 706(f) and 706(k) of Title VII authorize a federal-court action to recover an award of attorney's fees for work done by the prevailing complainant in state proceedings to which the complainant was referred pursuant to the provisions of Title VII." *N.Y. Gaslight Club, Inc.*, 447 U.S. at 71. Since the plaintiff in *N.Y. Gas Light Club* did prevail in the state proceedings, the question of whether the party must have prevailed in those proceedings in order to recover fees associated with them was not addressed by the Court.

42 U.S.C. § 1988(b) provides, in relevant part, that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title ...

19

the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Costco argues that "prevailing party" in §1988 means that the party must have prevailed in that stage of the litigation for which he seeks counsel fees, regardless of whether he ultimately was the "prevailing party" at trial. We disagree. We conclude that nothing in § 1988 requires Ridley to have prevailed in the PHRC proceedings in order for the District Court to have been allowed to order reimbursement of his fees and costs under § 1988. Ridley was required to conduct the administrative proceedings at the PHRC prior to bringing his claims in federal court; the PHRC proceedings were a necessary precursor to Ridley's ultimate success at trial on his claim for retaliatory constructive discharge. We will therefore vacate the District Court's attorneys' fee award and remand for reconsideration of Ridley's request for counsel fees for the PHRC proceeding with the understanding that Ridley was not required to prevail at the PHRC proceeding in order to recover fees for counsel's work related to that proceeding.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court denying Costco's motion for judgment as a matter of law and denying its motion to vacate or reduce the jury award of emotional distress damages. We will also affirm the District Court's order granting summary judgment for Costco on Ridley's claim for punitive damages and its order denying Ridley's motion to file an overlength brief. We will vacate

20

the District Court's award of attorneys' fees and remand for further consideration consistent with this opinion. In particular, we will vacate the District Court's assessment of Matos' hourly rate, and remand for a new calculation in accordance with this opinion. We will also vacate the District Court's denial of Ridley's request for counsel fees for the PHRC proceeding, and direct the Court to reconsider this request with the understanding that Ridley was not required to prevail at the PHRC proceeding in order to recover fees for counsel's work related to that proceeding.